1  Jason Kuller, NV Bar No. 12244
   Rachel Mariner, NV Bar No. 16728
2  Shay Digenen, NV Bar No. 16397
   **RAFII & ASSOCIATES, P.C.**
3  1120 N. Town Center Dr., Ste. 130
   Las Vegas, Nevada 89144
4  Phone: 725.245.6056
   Fax: 725.220.1802
5  jason@rafiilaw.com
   rachel@rafiilaw.com
6  shay@rafiilaw.com
   *Attorneys for Plaintiff*

7

8                    **UNITED STATES DISTRICT COURT**

9                       **DISTRICT OF NEVADA**

10  JALA HARPER, on behalf of herself        Case No. 2:24-CV-00989-DJA
    and all others similarly situated,
11                                           **COMPLAINT FOR DAMAGES**
                   Plaintiff,
12                                           **CLASS ACTION COMPLAINT FOR:**
          v.
13                                              1.  Failure to Pay Wages for Each Hour Worked in
    SOUTHWEST AIRLINES CO., a                       Violation of NRS 608.016;
14  foreign corporation; and DOES 1            2.  Failure to Pay Overtime in Violation of NRS
    through 50, inclusive,                          608.018;
15                                              3.  Failure to Timely Pay All Wages Due and
                   Defendants.                      Owing in Violation of NRS 608.020-050;
16
                                             **COLLECTIVE ACTION COMPLAINT FOR:**
17
                                                4.  Failure to Pay Overtime in Violation of the
18                                                  FLSA, 29 U.S.C. § 207;

19                                           **INDIVIDUAL COMPLAINT FOR:**

20                                              5.  Racial Discrimination;
                                                6.  Sexual Discrimination;
21                                              7.  Hostile Work Environment Harassment
                                                8.  Disability Discrimination;
22                                              9.  Retaliation;
                                                10. Tortious Discharge;
23                                              11. Intentional Infliction of Emotional Distress; and
                                                12. Negligent Infliction of Emotional Distress
24
25                                              **JURY TRIAL DEMANDED**
26
27  ///

28  ///



                                        1
                 **CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff JALA HARPER alleges as follows:

1.     This is a class and collective action complaint against SOUTHWEST AIRLINES CO. ("Southwest" or "Defendant") for unpaid wages, overtime, liquidated damages, attorneys' fees, costs, and interest under the Nevada Revised States ("NRS") and the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

2.     This action also seeks relief for Southwest's discrimination, harassment, and retaliation against Plaintiff in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and Nevada's equal employment opportunity ("EEO") laws, NRS 613.310-613.4383, among other causes of action.

3.     All allegations in this Complaint are based on information and belief except for those allegations pertaining specifically to Plaintiff, which are based on Plaintiff's personal knowledge. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## PARTIES

4.     At all relevant times,  Plaintiff JALA HARPER lived in Clark County, Nevada, and was employed by Defendant as a Customer Representative.

5.     At all relevant times, Defendant SOUTHWEST AIRLINES CO. was a foreign corporation registered and licensed to do business under Nevada law (NV19811014953).  Southwest is a major U.S. airline headquartered in Dallas, Texas.

6.     "Nevada Class Members" are all current and former Customer Representatives employed by Southwest in the State of  Nevada at any time within the last two years until the date of judgment (the "Nevada Class Period").

7.     "Federal Class Members" are all current and former Customer Representatives employed by Southwest in the United States at any time within the last three years until the date of judgment (the "FLSA Class Period").

8.     The identities of Does 1-50 ("Doe Defendants") are unknown at this time, and this Complaint will be amended at such a time when Plaintiff learns of their identities.  Plaintiff is informed and believe that each of the Doe Defendants is responsible in some manner for the acts, omissions, or

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

representations alleged herein.

9.     Any reference in this Complaint to "Defendant," "Defendants," "Doe Defendants," "Southwest Airlines Co.," or "Southwest," or "Restaurant" shall mean "Defendants and each of them."

10.     At all relevant times, each Defendant was an agent, manager, employee, joint-venturer, shareholder, director, member, co-conspirator, alter ego, master, or partner of other Defendants, and at all times mentioned herein was acting within the scope and course and in pursuance of his, her, their, or its agency, joint venture, partnership, employment, common enterprise, or actual or apparent authority in concert with other Defendants.

11.     At all relevant times, the acts and omissions of Defendants concurred and contributed to the various acts and omissions of other Defendants in proximately causing the complaints, injuries, and damages alleged herein.  At all relevant times, Defendants approved of, condoned, or otherwise ratified each and every one of the acts or omissions complained of herein.  At all relevant times, Defendants aided and abetted the acts and omissions of other Defendants thereby proximately causing the damages herein alleged.

12.     At all relevant times, Defendants are or were jointly and severally liable for all injuries and damages alleged herein.  Further, Plaintiff alleges that Defendants were joint employers regarding Plaintiff in all aspects.

## JURISDICTION AND VENUE

13.     Plaintiff incorporates and realleges all paragraphs above.

14.     The Court has jurisdiction over Plaintiff's discrimination, harassment, and retaliation claims under Title VII, 42 U.S.C. § 2000e-5, which states: "Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter."   Plaintiff exhausted her administrative remedies with the Nevada Equal Rights Commission ("NERC") and Equal Employment Opportunity Commission ("EEOC") and was issued a Notice of Right to Sue by the EEOC on June 26, 2024.

15.     The Court has jurisdiction over Plaintiff's collective action overtime claim under the FLSA, 29 U.S.C. § 216(b), which states: "An action to recover the liability prescribed … may be

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

16.     Because Plaintiff's Title VII and FLSA claims arise under federal law, the Court has federal question jurisdiction pursuant to 28 U.S.C §1331.

17.     The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs.

18.     In addition, the Court has supplemental jurisdiction over Plaintiff's Nevada state-law claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact regarding Defendant's unlawful treatment of Plaintiff, and form part of the same case and controversy.

19.     Venue is proper in this Court because Plaintiff resided and worked for Defendant within this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.  *See* 28 U.S.C. § 1391(b).

## <u>INDIVIDUAL TITLE VII AND EEO ALLEGATIONS</u>

20.     Plaintiff incorporates and realleges all paragraphs above.

21.     Ms. Harper is a black woman in her thirties.

22.     Southwest hired Ms. Harper as Customer Representative on or about September 12, 2022.

23.     Following two weeks of training at the Southwest Headquarters Campus in Dallas, Texas, Ms. Harper began working remotely from home in Las Vegas, Nevada.

24.     On November 14, 2022, Ms. Harper had her first virtual training session with her assigned Team Lead, Mathew Parker.

25.     Mr. Parker was an older white male in his forties, whereas Plaintiff is a black woman in her thirties.

26.     The first thing Mr. Parker said to Plaintiff was: "You have such a pretty smile."  This made Plaintiff feel uncomfortable.  Ms. Harper did not consider this a professional greeting between a Team Lead and a subordinate during their very first meeting – a "training session."

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**CLASS AND COLLECTIVE ACTION COMPLAINT**

27.     Rather than discussing job duties or work performance, Mr. Parker was more interested in asking Plaintiff personal questions about how she liked to spend nonworking hours.    After commenting on Plaintiff's smile, Mr. Parker then asked her: "Tell me about yourself."

28.     When Plaintiff attempted to keep her answers brief and generic (she liked "sports" for example), Mr. Parker dug deeper.  He asked Plaintiff if she liked to travel and "what else do you like outside of work?"

29.     Whereas Plaintiff expected work feedback and training, Mr. Parker treated their virtual Zoom call as if they had just matched on an internet dating website.

30.     Before the training session concluded, Mr. Parker again commented on Plaintiff's "pretty smile."

31.     Plaintiff's second "training session" with Mr. Parker was a week later on November 21, 2022.

32.     Concerned by Matthew Parker's inappropriate behavior at the first session, Ms. Harper decided to keep her camera off on the second meeting to avoid the comments Mr. Parker made in the first meeting, and avoid the concomitant discomfort and anxiety is caused her.

33.     When Ms. Harper's camera was off for the second meeting, this instantly enraged Matthew Parker.

34.     Matthew Parker exclaimed, "I need cameras!"

35.     Matthew Parker grew more upset over the course of the meeting and yelled at Ms. Harper , demanding that she "shut up and listen to him."

36.     The second training session thus turned into a fifty-six minute diatribe as Matthew Parker belittled Ms. Harper's work ethic, character, and personal views.

37.     Matthew Parker called her a "liar" and told her to "shut up"

38.     Ms. Harper tried to de-escalate the situation, saying she never intended their conversation to grow heated.

39.     Matthew Parker in response accused Ms. Harper of being "manipulative" because she could "speak well for an African American woman."

40.     Ms. Harper understood that he did not expect a Black woman to be well-spoken.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

41. Ms. Harper understood that Matthew Parker thought a well-spoken Black person was rare.

42. At that moment and after that, Ms. Harper dreaded working with Matthew Parker and knew her future at Southwest would be limited by his irrational anger at her lack of receptivity to his inappropriate flirtations.

43. Ms. Harper knew her future at Southwest would be limited by Matthew Parker's sexist and racist view of her.

44. Ms. Harper was truly physiologically and psychologically shaken by that second training session.

45. Ms. Harper left the session in tears and with strong feelings of anxiety and dread.

46. The dread and anxiety stemmed from Matthew Parker' behavior.

47. Matthew Parker had demonstrated to Ms. Harper that he had objectified her and assumed on the basis of her race and gender that she would be performing poorly.

48. Matthew Parker demonstrated to Ms. Harper that he assumed on the basis of her gender that she was 'manipulative'

49. Ms. Harper reported the harassment to the Manager of Operations at Southwest Meredith Schess by phone and email the next day.

50. Schess did not respond the same day, even though Ms. Harper had asked for a response as soon as possible and provided her personal phone number and asked to be contacted on her day off.

51. Schess replied that she was sorry Ms. Harper felt bad about the incident.

52. Thus Schess reduced this serious incident of race and gender hostility to a belittling and insulting assessment: "I am sorry that you feel your Coaching was a bad experience"

53. Eventually Schess suggested that Ms. Harper, rather than the HR department, pursue her complaint with Matthew Parker's supervisor and friend, Manager Gwen Edsall about the incident.

54. Ms. Harper did so immediately but Edsall did not respond for five days.

55. In the delay in a response from Edsall, which concerned her deeply, Ms. Harper escalated her complaint to VP of Customer Service James Ashworth.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

56.     Before Ms. Harper received a substantive response or corrective action from Schess, Edsall or Ashworth, her harasser Mathew Parker scheduled another training session and told her "NOT TO REMOVE IT"

57.     At this point, Ms. Harper had only received one training session but her peers had received three.

58.     Ms. Harper was working remotely, alienated by Parker and cut off from upper management.

59.     Suddenly Defendant switched Ms. Harper to a new team lead (without disciplining Matthew Parker).

60.     The cumulative effect of Parker's harassment, management's apathy and disbelief and the sudden switch to a new Team Lead took a harsh psychological toll on Ms. Harper – she had a panic attack, broke out in hives and had to go to an emergency room.

61.     Thus, more than once and beginning in Decemeber 2022, Ms. Harper began to have panic attacks of such severity that trips to the emergency room were required.

62.     As a result of the first panic attack, Ms. Harper's doctor required that Ms. Harper have three days off.

63.     Ms. Harper's doctor advised Ms. Harper to seek mental health care professional help.

64.     Ms. Harper did so and the mental health professional advised that Ms. Harper required leave from December 2022 through to February 2023 as an accommodation to her mental health.

65.     Southwest approved the additional medical leave days advised by the mental health professional.

66.     Ms. Harper resumed her work with Southwest in March, 2023.

67.     Ms. Harper did so against advice of the mental health professional, who believed she was not ready to go back to work, but she was concerned about her job.

68.     Ms. Harper then when she assessed how she was, took the professional advice on board and informed Southwest that she needed additional time off.

69.     Southwest terminated Ms. Harper's employment the same week, on March 25, 2023

70.     Southwest's stated reason for the termination of Ms. Harper's employment is that she

7

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

"greatly exceed[ed] the number of absences Customer Representatives are allowed to have while they are on probation."

71.   However Ms. Harper was no longer on probation at the point she was terminated.

72.   The stated reason for the termination was pretextual.

73.   Further, Southwest had approved her time off.

74.   This is another way to demonstrate that the termination was pretextual.

75.   From December 2022 until her termination date, Ms. Harper had to go to the emergency room four times with panic attacks.

## CLASS AND COLLECTIVE WAGE ALLEGATIONS

76.   Plaintiff incorporates and realleges all paragraphs above.

77.   Plaintiff brings this action on behalf of herself and Nevada Class Members and Federal Class Members (collectively "Class Members").

78.   At all relevant times, Defendant required Plaintiff and Class Members to clock in and out at the beginning and end of their shifts using a timekeeping program accessible online via their work computers and Southwest's virtual private network ("VPN").

79.   In order to access the timekeeping program at the beginning of their shifts, Plaintiff and Class Members first had to awaken or boot up their computers, log in with their credentials to connect to the VPN, then enter different credentials to sign into the timekeeping program, and finally enter their clock-in time (all such time collectively referred to herein as "Boot Time").

80.   This Boot Time process took approximately five minutes.

81.   Plaintiff and Class Members were expected to be logged into Southwest's VPN and clocked in before they could start their daily work shifts.

82.   Indeed, a scheduled work shift could not begin until Plaintiff and Class Members were logged in and clocked in on their computers.

83.   Defendant did not compensate Plaintiff or Class Members for the Boot Time before their shifts began.

84.   Boot Time occurred regularly each workday and could have been recorded or compensated by Defendant without any practical administrative difficulty.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

85.     Because Plaintiff and Class Members typically worked 8 hours per shift and 40 hours per week, nearly all Boot Time constituted unpaid overtime.

86.     In addition, Plaintiff and Class Members who worked remotely were paid a "remote work stipend" of $75.00 per pay period.  However, Defendant did not include the amount of this stipend in Plaintiff's and Class Members' regular rate of pay for purposes of calculating and paying overtime.

87.     During the pay period from 09/16/2022 through 09/30/2022, Plaintiff was paid for 85 regular hours without any overtime.  Plaintiff was also paid for 2.92 hours of travel time during this pay period, as well as a $75 "remote work stipend."

88.     During the pay period from 11/01/2022 through 11/15/2022, Plaintiff was paid for 1.85 hours of overtime as well as a $75 "remote work stipend."  However, the overtime was paid at 1.5 times Plaintiff's $17.00 hourly rate – i.e., an overtime rate of $25.00 per hour – without including the remote stipend amount in the regular rate and overtime calculation.

89.     Nor did Defendant include non-discretionary bonus amounts in the regular rate of pay for the purpose of paying overtime to Plaintiff and Class Members.

90.     For example, during the pay period from 01/01/2023 through 01/15/2023, Plaintiff received a $1,000 bonus as well as a $75 "remote work stipend."  Yet neither of these amounts were included in the regular rate of pay in paying 67.57 hours of overtime worked by Plaintiff.  Instead, all these overtime hours were compensated at 1.5 times Plaintiff's regular hourly rate.

91.     By failing to pay Plaintiff and Class Members as hereinabove described, Defendant failed to pay Plaintiff and Class Members all wages and overtime due and owing.

92.     At all relevant times, Plaintiff and Class Members were regularly scheduled to work 8 hours per shift and 40 hours per week.

93.     At all relevant times, Defendant failed to pay wages to Plaintiff and Class Members for increments of Boot Time.

94.     At all relevant times, Defendant failed to pay overtime to Plaintiff and Class Members for increments of Boot Time that exceeded 40 hours per week.

95.     At all relevant times, Defendant failed to include all compensation and remuneration

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

received by Plaintiff and Class Members in their regular rate of pay for purposes of calculating and paying overtime.

96.     Defendant knew or should have known that Plaintiff and Class Members were not properly compensated for Boot Time or overtime.

97.     Defendant knew or should have known that Plaintiff and Class Members were entitled to receive compensation for all time and overtime worked, including Boot Time.

98.     Defendant knew or should have known that Plaintiff and Class Members were entitled to receive overtime compensation based on a regular rate pay that included all forms of remuneration received during a given pay period.

99.     Defendant had a duty, as well as the financial ability, to compensate Plaintiff and Class Members for all hours and overtime hours worked, but willfully, knowingly, and intentionally failed to do so in order to save money and decrease Defendant's labor costs.

100.    Despite a wage demand sent to Defendant on September 19, 2023, Defendant continues to refuse to pay Plaintiff and other similarly-situated employees all wages and damages due and owing under Nevada law and the FLSA.

## NEVADA CLASS ACTION ALLEGATIONS

101.    Plaintiff incorporates and realleges all paragraphs above.

102.    Plaintiff brings this action as a class action on behalf of Nevada Class Members under Federal Rule of Civil Procedure 23.

103.    At all relevant times, Plaintiff and Nevada Class Members  were each an "employee" within the meaning of Nevada law.  *See* NRS 608.010.

104.    At all relevant times, Defendant was an "employer" of Plaintiff and Nevada Class Members  within the meaning of Nevada law. *See* NRS 608.011.

105.    Plaintiff reserves the right to modify or redefine "Nevada Class Members" for purposes of this action and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

106.    Class treatment of Nevada Class Members is appropriate under Rule 23 for the following reasons:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

A. **Numerosity**:  Nevada Class Members are so numerous that joinder would be impractical, and the disposition of their claims on a class (rather than individual) basis will conserve resources of the parties and judicial system.  While the number of Nevada Class Members is unknown at this time, this information can be readily ascertained from Defendant's business records.  Upon information and belief, Defendant employs, or has employed, over 25 Nevada Class Members during the Nevada Class Period.

B. **Commonality**:  Common questions of law and fact exist and predominate as to Plaintiff and Nevada Class Members, including, but not limited to:

    i.    Whether Plaintiff's and Nevada Class Members' Boot Time is compensable time under Nevada law;

    ii.    Whether Defendant failed to include stipend and bonus amounts in the regular rate of pay for purposes of calculating and paying overtime to Plaintiff and Nevada Class Members;

    iii.    Whether Defendant failed to timely pay Plaintiff and Nevada Class Members all wages due and owing upon separation from their employment.

C. **Typicality**:  Plaintiff's claims are typical of the claims of Nevada Class Members because Plaintiff and Nevada Class Members were subject to the same employment policies and practices of Defendant during the Nevada Class Period, and each sustained damages.  Proof of a common or single state of facts will therefore establish the right of Plaintiff and Nevada Class Members to recover.

D. **Adequacy**:  Plaintiff will fairly and adequately represent the interests of Nevada Class Members because Plaintiff is a Nevada Class Member and has the same legal and factual issues as Nevada Class Members and has no interests antagonistic to Nevada Class Members.  Plaintiff has retained legal counsel competent and experienced in class actions, including labor and employment litigation.  Plaintiff and her counsel are aware of their fiduciary responsibilities to Nevada Class Members and are determined to discharge those duties diligently by vigorously seeking the maximum possible recovery for Nevada Class Members.

E. **Superiority**:  A class action is superior to other available means for the fair and efficient

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

adjudication of this controversy. Plaintiff and each Nevada Class Member has been damaged and is entitled to recovery by reason of Defendant's illegal practice of failing to compensate Customer Representatives in accordance with Nevada wage-and-hour law.  Class action treatment will permit a relatively large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the prosecution of individual lawsuits by each Nevada Class Member would present the risk of inconsistent and contradictory judgments, along with the potential for establishing inconsistent standards of conduct for Defendant and other state employers.  Consequently, an important public interest will be served by addressing this matter as a class action.

### COLLECTIVE ACTION ALLEGATIONS

107.    Plaintiff incorporates and realleges all paragraphs above.

108.    Plaintiff brings this action on behalf of herself and Federal Class Members as a collective action pursuant to 29 U.S.C. § 216(b).

109.    Federal Class Members are similarly situated to Plaintiff, and vice versa.

110.    Plaintiff is similarly situated to Federal Class Members based on the same factors of commonality, typicality, and adequacy enumerated above.

111.    At all relevant times, Plaintiff  and Federal Class Members were each an "employee" within the meaning of the FLSA.  *See* 29 U.S.C. § 203(e), (g).

112.    At all relevant times, Defendant was an "employer" of Plaintiff and Federal Class Members within the meaning of the FLSA.  *See* 29 U.S.C. § 203(d), (g).

113.    Plaintiff reserves the right to modify or redefine "Federal Class Members" for purposes of this action and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

114.    Pursuant to 29 U.S.C. § 216(b), Plaintiff has filed her consent to join this FLSA collective action as of September 24, 2024.  *See* attached Exhibit A.

### FIRST CAUSE OF ACTION

### Failure to Pay Wages for Each Hour Worked in Violation of NRS 608.016

### (On Behalf of Plaintiff and Nevada Class Members)

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

115.     Plaintiff incorporates and realleges all paragraphs above.

116.     NRS 608.016 states that "An employer shall pay to the employee wages for each hour the employee works."

117.     Hours worked means anytime the employer exercises "control or custody" over an employee.  *See* NRS 608.011 (defining an "employer" as "every person having control or custody of any employment, place of employment or any employee.").

118.     Pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee."  N.A.C. 608.115(1).

119.     Here, Defendant failed to pay Plaintiff and Nevada Class Members for Boot Time.

120.      Defendant's policy and practice violated NRS 608.016, which requires payment for each and every hour worked.

121.     Wherefore, Plaintiff and Nevada Class Members demand payment by Defendant at their regular hourly rate of pay for each and every hour worked during the Nevada Class Period, together with attorney's fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION

### Failure to Pay Overtime in Violation of NRS 608.018

### (On Behalf of Plaintiff and Nevada Class Members)

122.     Plaintiff incorporates and realleges all paragraphs above.

123.     In relevant part, NRS 608.018(2) provides that "An employer shall pay 1 ½ times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 ½ times the minimum rate set forth in NRS 608.250 works: (a) more than 40 hours in any scheduled week of work…."

124.     Here, Plaintiff and Nevada Class Members worked over 40 hours per workweek without being paid overtime for the hours of compensable time over 40.  This includes time spent on uncompensated Boot Time.

125.     Wherefore, Plaintiff and Class Members demand payment by Defendant at one and one-half times their "regular rate" of pay for all hours worked in excess of 40 hours per workweek

**CLASS AND COLLECTIVE ACTION COMPLAINT**



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

during the Nevada Class Period, together with attorney's fees, costs, and interest as provided by law.

### THIRD CAUSE OF ACTION

### Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.020-050

### (On Behalf of Plaintiff and Nevada Class Members)

126.    Plaintiff incorporates and realleges all paragraphs above.

127.    NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

128.    NRS 608.030 similarly provides that an employee who resigns or quits must be paid within seven days or on the next regular payroll date, whichever earlier occurs.

129.    NRS 608.040(1) states that "Within 3 days after the wages or compensation of a discharged employee becomes due; or…[o]n the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30 days, whichever is less."

130.    NRS 608.050 grants a "lien" to every employee separated from employment for the purpose of collecting any wages or compensation due and owing, including up to 30 additional days of compensation "without rendering any service therefor."

131.    Here, by failing to compensate Plaintiff and Nevada Class Members separated from employment for all hours and overtime hours worked as hereinabove described, Defendant has failed to timely remit all wages due and owing to Plaintiff and those Nevada Class Members.

132.    Wherefore, Plaintiff and Nevada Class Members separated from Defendant's employment demand up to thirty (30) days of wages and an "employee lien" pursuant to NRS 608.040 and NRS 608.050, together with attorney's fees, costs, and interest as provided by law.  Plaintiff and Nevada Class Members also claim a private cause of action to foreclose a lien against Defendant, if necessary, to collect wages due pursuant to NRS 608.050.

### FOURTH CAUSE OF ACTION

### Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. § 207

### (On Behalf of Plaintiff and Federal Class Members)

**CLASS AND COLLECTIVE ACTION COMPLAINT**



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

133.   Plaintiff incorporates and realleges all paragraphs above.

134.   The FLSA provides that "[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C § 207(a)(1).

135.   At all relevant times, Defendant failed to pay one and one-half times the applicable regular rate of pay for all hours worked by Plaintiff and Federal Class Members in excess of 40 hours in any given workweek.

136.   Defendant's violation of the FLSA has been willful, and Defendant knew or should have known that its policies and practices have been unlawful.

137.   Wherefore, Plaintiff and Federal Class Members demand payment by Defendant at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours a week during the FLSA Class Period, plus an additional equal amount as liquidated damages, together with attorney's fees, costs, and interest as provided by law.

## FIFTH CAUSE OF ACTION

### Race Discrimination

### (On Behalf of Plaintiff)

138.   Plaintiff incorporates and realleges all paragraphs above.

139.   Nevada's EEO laws also prohibit discrimination against employees based on their race. Specifically, "it is an unlawful employment practice for an employer…[t]o fail or refuse to hire or to discharge any person, or otherwise to discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of [their]…race [or t]o limit, segregate or classify an employee in a way which would deprive or tend to deprive the employee of employment opportunities or otherwise adversely affect his or her status as an employee, because of [their]…race." NRS 613.330(1); *see also* NRS 613.310(8) (defining "race" to include "hair texture and protective hairstyles"). Title VII of the Civil Rights Act of 1964 similarly prohibits discrimination

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

based on an "individual's race, color. . . or national origin." 42 U.S.C. § 2000e-2(a).

140.    Here, Defendant unlawfully discriminated against Plaintiff with respect to the compensation, terms, conditions, and privileges of her employment because of her race.  Plaintiff was subject to different terms and conditions of employment than her white counterparts.  Defendant ratified, condoned, and failed to take any corrective action against the discriminatory conduct directed toward Plaintiff.

141.    Defendant acted intentionally, with malice, fraud, or oppression, in discriminating against Plaintiff because of her race.

142.    As a result of Defendant's wrongful actions, Plaintiff has sustained significant general and special damages to be proven at trial.  Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

**SIXTH CAUSE OF ACTION**

**Sexual Discrimination**

**(On Behalf of Plaintiff)**

143.    Plaintiff incorporates and realleges all paragraphs above.

144.    Nevada's EEO laws also prohibit discrimination against employees based on their sex.  Specifically, "it is an unlawful employment practice for an employer…[t]o fail or refuse to hire or to discharge any person, or otherwise to discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of [their]…sex [or t]o limit, segregate or classify an employee in a way which would deprive or tend to deprive the employee of employment opportunities or otherwise adversely affect his or her status as an employee, because of [their]…sex." NRS 613.330(1).  Title VII of the Civil Rights Act of 1964 similarly prohibits discrimination based on an individual's sex.  *See* 42 U.S.C. § 2000e-2(a).

145.    Here, Defendant unlawfully discriminated against Plaintiff with respect to the compensation, terms, conditions, and privileges of her employment because of her sex.  Plaintiff was subject to different terms and conditions of employment than her male counterparts.  Defendant ratified, condoned, and failed to take any corrective action against the harassing and discriminatory

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

conduct directed toward Plaintiff.

146.    Defendant acted intentionally, with malice, fraud, or oppression, in discriminating against Plaintiff because of her sex.

147.    As a result of Defendant's wrongful actions, Plaintiff has sustained significant general and special damages to be proven at trial.  Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

**SEVENTH CAUSE OF ACTION**

**Hostile Work Environment Harassment**

**(On Behalf of Plaintiff)**

148.    Plaintiff incorporates and realleges all paragraphs above.

149.    Defendant, by its actions alleged above, also subjected Plaintiff to a hostile work environment based on her  race and sex.

150.    During her employment, Defendant repeatedly subjected Plaintiff to unwelcome statements and conduct based on her race and sex.  These statements and conduct were sufficiently severe or pervasive to alter the conditions of employment by creating an intimidating, hostile, or offensive work environment.  Furthermore, Defendant failed to prevent or remedy the conditions constituting the hostile work environment that Plaintiff was subjected to during her employment.

151.    Defendant acted intentionally, with malice, fraud, or oppression, in discriminating against Plaintiff because of her sex.

152.    As a result of Defendant's wrongful actions, Plaintiff has sustained significant general and special damages to be proven at trial.  Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

**EIGHTH CAUSE OF ACTION**

**Disability Discrimination**

**(On Behalf of Plaintiff)**

153.    Plaintiff incorporates and realleges all paragraphs above.

17

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

154.   42 U.S.C. § 12112(a) says, in relevant part, "No [employer] shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

155.   Nevada law also prohibits discrimination against an employee based on her disability. Specifically, "it is an unlawful employment practice for an employer: (a) To fail or refuse to hire or to discharge any person, or otherwise to discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of his or her . . . disability . . . or (b) To limit, segregate or classify an employee in a way which would deprive or tend to deprive the employee of employment opportunities or otherwise adversely affect his or her status as an employee, because of his or her . . . disability."  NRS 613.330(1).

156.   Here, Plaintiff was subject to different terms and conditions of employment based on her disability, without limitation, when Defendant refused to recognize her legitimate need for reasonable accommodations as recommended by her doctors, including absences from work due to emergency room visits for anxiety symptoms related to the workplace environment and harassment described hereinabove. Defendant failed to accommodate Plaintiff or otherwise engage in the interactive process required by the Americans with Disabilities Act ("ADA") and the ADA Amendments Act of 2008 ("ADAAA") and eventually terminated Plaintiff based on her need to miss work because of her anxiety and related symptoms.

157.   Defendants acted intentionally, with malice, fraud, or oppression, in discriminating against Plaintiff because of her sex.

158.   As a result of Defendants' wrongful actions, Plaintiff has sustained significant general and special damages to be proven at trial.  Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

### **NINTH CAUSE OF ACTION**

### **Retaliation**

### **(On Behalf of Plaintiff)**

**CLASS AND COLLECTIVE ACTION COMPLAINT**

159.    Plaintiff incorporates and realleges all paragraphs above.

160.    Nevada's EEO laws prohibit employers from retaliating against employees who engage in protected activity regarding a perceived discriminatory employment practice.  *See* NRS 613.340.  Title VII of the Civil Rights Act of 1964 similarly prohibits an employer from retaliating against an employee who has "made a charge, testified, assisted or participated in" any charge of unlawful discrimination under Title VII.  42 U.S.C. § 2000e-3(a).

161.    Here, Plaintiff suffered adverse employment actions once she had complained of the behavior of Matthew Parker.

162.    Plaintiff suffered adverse employment actions for seeking accommodation of her disability.

163.    Defendant's retaliatory actions thwarted Plaintiff's professional growth and led to the eventual termination of her employment on March 25, 2023.

164.    Defendants acted intentionally, with malice, fraud, or oppression, in discriminating against Plaintiff because of her sex.

165.    As a result of Defendants' wrongful actions, Plaintiff has sustained significant general and special damages to be proven at trial.  Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

## TENTH CAUSE OF ACTION

### Tortious Discharge

### (On Behalf of Plaintiff)

166.    Plaintiff incorporates and realleges all paragraphs above.

167.    Defendant's actions, as alleged above, are contrary to substantial and fundamental public policies delineated in both state and federal laws, including but not limited to NRS 613.310-613.4383 (Nevada's equal employment opportunity laws), Title VII of the Civil Rights Act, and the ADA as amended by the ADAAA.  These state and federal laws articulate substantial and fundamental public policies in favor of a workplace environment free from discrimination, harassment, and retaliation based on race, sex, and disability, including the freedom to report discrimination and

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

harassment and to reject the sexual advances of managers,.

168.    Here, Defendants termination of Plaintiff was wrongful, tortious, and contrary to the public policies of Nevada and of the United States.  Defendants acted intentionally, with malice, fraud, or oppression, in terminating Plaintiff.

169.    As a result of Defendants' wrongful actions, Plaintiff has sustained significant general and special damages to be proven at trial.  Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

**ELEVENTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(On Behalf of Plaintiff)**

170.    Plaintiff incorporates and realleges all paragraphs above.

171.    Defendant's conduct, as alleged above, was extreme and outrageous, and Southwest either intended to cause Plaintiff severe emotional distress or acted with reckless disregard for the likely consequences of its conduct.

172.    Defendant's conduct in this case not only violated Plaintiff's rights but also jeopardized her well-being, mental stability, and peace of mind.

173.    Ms. Harper suffered and continues to suffer emotional distress.  Ms. Harper's emotional distress is manifested by the physical symptoms of severe panic attacks and anxiety.

174.    Defendants acted intentionally with malice, fraud, or oppression.  Defendants either intended to cause Plaintiff severe emotional distress or acted with reckless disregard for the likely consequences of its conduct.

175.    As a result of Defendants' actions, Plaintiff has sustained significant general and special damages to be proven at trial. Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

**TWELFTHTH CAUSE OF ACTION**

**Negligent Infliction of Emotional Distress**

20

**CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**(On Behalf of Plaintiff)**

176.    Plaintiff incorporates and realleges all paragraphs above.

177.    As Plaintiff's employer, Southwest owed a duty of care to Plaintiff.  At the very least, this duty included not violating Nevada state law and public policy – i.e., not discriminating against Plaintiff based on her race and sex, not ratifying and condoning her harassment, not retaliating against her, and not terminating her.

178.    By engaging in the conduct alleged above, Defendant breached the duty of care it owed to Plaintiff.

179.    As a result of Defendants' actions, Plaintiff has sustained significant general and special damages to be proven at trial. Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff pray for relief as follows:

1.    For compensatory damages, including front pay, back pay, lost wages and benefits, out-of-pocket costs and expenses, emotional distress damages, punitive damages, as well as other special and general damages, according to proof;

2.    For damages, according to proof for the regular rate of pay under applicable state or federal law for all hours worked;

3.    For damages, according to proof for the minimum wage rate under applicable state or federal law for all hours worked;

4.    For damages according to proof of overtime compensation at one and one-half the regular rate of pay under applicable state or federal law for all unpaid or underpaid hours worked over 40 in a week, or over 8 hours in a single period of 24 consecutive hours;

5.    For 30 days of wages pursuant to NRS 608.040 and 608.050;

6.    For liquidated (double) damages pursuant to 29 U.S.C. § 216(b).

7.    For an order certifying this action as a class action under FRCP 23 on behalf of



21

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Nevada Class Members;

8.  For an order conditionally certifying this action as a collective action under the FLSA on behalf of Federal Class Members;

9.  For an order appointing Plaintiff as representatives and their counsel as class counsel for Federal Class Members and Nevada Class Members;

10. For reasonable attorneys' fees authorized by statute, common law, or equity;

11. For costs of suit incurred herein;

12. For pre-judgment and post-judgment interest at the maximum legal rate; and

13. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DATED: September 24, 2024            **RAFII & ASSOCIATES, P.C.**

_____

JASON KULLER
Of Counsel
*Attorney for Plaintiff*



**CLASS AND COLLECTIVE ACTION COMPLAINT**

# EXHIBIT A

# EXHIBIT A

## CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT

Print Name:  Jala Harper

1. I hereby consent to be a party plaintiff in a collective action lawsuit against **SOUTHWEST AIRLINES CO.,** and/or any other named defendants ("Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

2. I understand this lawsuit seeks to recover unpaid minimum wages, overtime compensation, liquidated damages, attorneys' fees, costs, and other relief available pursuant to the FLSA.

3. I designate the law firm of RAFII & ASSOCIATES, P.C., and any other attorneys with whom they may associate, as my attorneys in this lawsuit to prosecute my FLSA and related claims.

4. I understand I have the right to pursue my claims individually on my own behalf. I agree to serve as the Class Representative if the Court so approves.  If someone else serves as Class Representative, then I designate such Class Representative(s) as my agents to make decisions on my behalf concerning the litigation and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at RAFII & ASSOCIATES, P.C., to use this consent to file my claims in a separate lawsuit, class/collective action, or arbitration against Defendants.

Signature: _____   Date: _____

9/24/2024

**CERTIFICATE OF SERVICE**

I hereby certify that, on the date shown file stamped on this pleading, I served a copy of the foregoing pleading via electronic service in accordance with the Court's order and Local Rules and that it was served on all parties registered with the Court's CM/ECF system of electronic service.

_____
JASON KULLER