**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JALA HARPER, | Case No.: 2:24-cv-01799-APG-DJA |
| Plaintiff | **Order (1) Granting in Part Southwest's Motion to Dismiss, (2) Denying Southwest's Motion for Sanctions, and (3) Granting Harper's Motion to Extend Time** |
| v. | |
| SOUTHWEST AIRLINES CO., | [ECF Nos. 26, 27, 33] |
| Defendant | |

Jala Harper sues her former employer, Southwest Airlines Co., asserting claims for discrimination based on her race, sex, and disability, creating a hostile work environment, retaliation, tortious discharge, and intentional infliction of emotional distress (IIED). She also sues Southwest under the Fair Labor Standards Act (FLSA) and Nevada law on behalf of a class of workers for allegedly failing to pay overtime, and under Nevada law for failing to pay for all hours worked and failing to timely pay wages owed upon separation.

Southwest moves to dismiss eight of Harper's claims, arguing that airline employees who perform work related to carrier operations are exempt from overtime laws and that Harper has not plausibly alleged the elements of her individual claims. Southwest also moves for sanctions against Harper and her counsel under Federal Rule of Civil Procedure 11, arguing that Harper's wage and hour claims lack a good faith basis supported by law or a nonfrivolous argument to extend, modify, or reverse existing law. Specifically, Southwest contends that courts have consistently held that customer service employees fall within the air carrier exemption. Southwest also argues that Harper's counsel failed to conduct a reasonable and competent inquiry prior to filing her claims because Southwest informed Harper's counsel that it has a policy of paying for boot time. Harper responds that her job is not related to Southwest's carrier

operations, she has plausibly alleged each of her individual claims, and she had a good faith basis for bringing her overtime claims.

I dismiss Harper's overtime claims because she is exempt from the FLSA and Nevada overtime provisions. I deny Southwest's motion to dismiss her individual claims because she has plausibly alleged facts that, taken in the light most favorable to her, state a valid claim. I deny Southwest's motion for sanctions because Harper had a good faith basis for her claims. I grant Harper's motion to extend time.

## I. BACKGROUND[1]

Southwest hired Harper to work as a remote customer service representative in September 2022. After two weeks of in-person training, Harper began working remotely from home where she attended virtual training sessions with her team lead, Mathew Parker. During their first training session, Parker told Harper, "'[y]ou have such a pretty smile,'" which made her feel uncomfortable. ECF No. 24 at 4. Parker repeated this statement again at the end of the training. During the training, Parker asked Harper personal questions unrelated to work such as if she liked to travel or what she liked to do outside of work. Harper was a black woman in her thirties and Parker was a white man in his forties.

Because she found this interaction uncomfortable and inappropriate, Harper kept her camera off during her second training session with Parker a week later. Parker allegedly became enraged and yelled at Harper to turn on her camera. Parker then became more upset and the training session "turned into a fifty-six minute diatribe as Mathew Parker belittled Ms. Harper's work ethic, character, and personal views." *Id.* at 5. In response to Harper's attempts to

---

[1] All facts are taken from the first amended complaint (ECF No. 24).

2

deescalate the situation, Parker accused her of being "'manipulative'" because she could "'speak well for an African American woman.'" *Id.*

Harper reported her experience to Southwest's manager of operations and then, after finding the response unsatisfactory, reached out its vice president of customer service. Meanwhile, Parker scheduled another training session and warned Harper not to remove it. Harper had received fewer training sessions than her peers at this point. Southwest then switched Harper to a new team lead without disciplining Parker. Harper asserts that her interactions with Parker, the unsatisfactory response from management, and the transfer to a new team lead caused her to have a panic attack, break out in hives, and go to the emergency room. She suffered several panic attacks in December 2022 that resulted in further emergency room visits.

Based on a mental health professional's advice, Harper took leave from December 2022 through February 2023, which Southwest approved. After Harper returned to work in March against her healthcare professional's advice, she determined that she needed additional time off. Harper informed Southwest that she needed additional time off and Southwest terminated her that same week. Southwest's stated reason was that she "'greatly exceeded the number of absences Customer Representatives are allowed to have while they are on probation.'" *Id.* at 8 (simplified). Harper denies that she was still on probation at that time.

Harper alleges that during her time at Southwest, she spent time each workday booting up her computer, logging in, connecting to Southwest's virtual private network (VPN), logging into the timekeeping software, and then repeating this process in reverse at the end of her shift. Boot time took approximately five minutes. Harper alleges that she and other class members were not paid for this boot time and typically worked 8 hours per shift, 40 hours per week.

## II. ANALYSIS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. Harper is exempt from both Nevada and the FLSA's overtime rules.

Southwest argues that both Nevada and federal overtime rules exempt airline employees and employees covered by a collective bargaining agreement (CBA). Harper responds that her job is not closely related to Southwest's transportation activities, so the exemption for airline employees does not apply. She also argues that at least part of her employment was not covered by a CBA, so that exemption does not apply either.

The FLSA requires employers to pay overtime rates for hours worked in excess of 40 hours. 29 U.S.C. § 207(a)(1). Nevada similarly requires overtime rates for hours worked above 40 hours in a week or either 8 or 10 hours in a workday based on the employee's schedule. Nev. Rev. Stat. § 608.018. However, the FLSA excepts from these requirements employees "of a carrier by air subject to the provisions of title II of the Railway Labor Act" (RLA). 29 U.S.C.

4

§ 213(b)(3).  And Nevada similarly excepts "[e]mployees of a carrier by air." Nev. Rev. Stat. § 608.018(3)(h).  Harper does not dispute that Southwest is a carrier by air.

"The purpose of the restrictive provisions of the [RLA] is to keep transportation moving." *Pan Am. World Airways, Inc. v. United Bhd. of Carpenters and Joiners of Am.*, 324 F.2d 217, 220 (9th Cir. 1963).  The Ninth Circuit has held that airline employees who provided housekeeping and general support services at a rocket test facility were not prohibited from striking by the RLA because their work bears only a "tenuous, negligible[,] and remote relationship to the transportation activities" of the air carrier. *Id.* at 220, 223.  Other circuits have more recently looked to the nature of an airline employee's work to determine if the RLA covers them. *See Thibodeaux v. Exec. Jet Int'l, Inc.*, 328 F.3d 742, 754 (5th Cir. 2003) ("[A]n employee whose work is not directly related to the air transportation activities of his employer" is not covered by the RLA exemption.); *Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283, 1287 (11th Cir. 2002) (holding that loadmasters are integral to transporting cargo and are therefore within the air carrier exemption); *Slavens v. Scenic Aviation, Inc.*, No. 99-4197, 221 F.3d 1353, 2000 WL 985933, at *2 (10th Cir. July 18, 2000) (holding that medical credentialling support activities are integral to air ambulance service and within the RLA exemption).

The District of Arizona recently concluded that an airline customer service representative who works in part from home fell withing the air carrier exemption. *Hartwig v. Am. Airlines Grp., Inc.*, No. cv-23-00696-PHX-SMB, 2024 WL 492235, at *1-2 (D. Ariz., Feb. 8, 2024).  The employee in *Hartwig* also brought wage and hour claims related to login time under the FLSA and state law. *Id.* at *1.  The district court held that the employee was subject to the RLA and therefore exempt because customer service "is understood to be a job traditionally performed by airline employees," and it does not have a tenuous, negligible, and remote relationship to the

airline's transportation activities. *Id.* at *2 (quotation omitted). The court found customer service was related to the transportation activities despite the plaintiff not working at the airport or interacting with the aircraft themselves. *Id.* Finally, the court rejected any need to develop a factual record because interacting with and serving air travel customers fit within the exemption and there were no allegations that the plaintiff performed any work unrelated to this customer service. *Id.*

The relevant allegations in Harper's complaint are nearly identical to the circumstances in *Hartwig*. Harper was also a remote customer service employee for a commercial airline, and she is seeking overtime wages for unpaid login time. She raises similar arguments such as her work being unrelated to transportation activities and a need to develop the facts to determine how much of her work was related to those activities.

Harper has not alleged that she had any job responsibilities other than performing customer service for Southwest's customers, let alone a substantial portion of her job duties.[2] And Harper does not identify a single case in which a court has held that customer service is not sufficiently related to an air carrier's transportation activities to fall outside the exemption. Although Harper argues that no court has interpreted Nevada's air carrier exemption, its language is similar to the FLSA exemption and Harper has not articulated a reason to interpret it differently. I therefore predict that the Supreme Court of Nevada would likewise hold that a customer service representative for an airline is exempt from Nevada's overtime requirements. *Judd v. Weinstein*, 967 F.3d 952, 955-56 (9th Cir. 2020) ("Where the state's highest court has not squarely addressed an issue, [I] must predict how the highest state court would decide the issue

---

[2] The Department of Labor takes the position that FLSA exemptions apply unless the employee performs "substantial" nonexempt work, which it defines as 20% of the time worked during the workweek. 29 C.F.R. § 786.1.

using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." (quotation omitted)).

I therefore grant Southwest's motion to dismiss Harper's second and fourth claims for failure to pay overtime. Because Harper is exempt from the FLSA and Nevada Revised Statute (NRS) § 608.018 as an employee of an air carrier, I need not address the parties' arguments about the applicability of the CBA. Finally, Harper could conceivably allege additional facts demonstrating that the nature of a substantial portion of her work fell outside Southwest's transportation activities, so I grant her leave to amend.

### B. Sanctions are not warranted because Harper had a good faith basis for bringing her wage claims.

Southwest argues that Harper's wage and hour claims for boot time are not warranted by existing law, and she does not have a nonfrivolous argument for extending, modifying, or reversing existing law. Southwest asserts that it informed Harper about adverse caselaw interpreting customer service positions to fall under the air carrier exemption to the FLSA and that it has a policy providing employees with 15 minutes of paid time to boot up their computers, login, and read employer messages. Harper responds that she informed her attorney that she was not paid for boot time despite the policy and that the air carrier exemption is a contested issue of law illustrated by many recent decisions.

When parties present pleadings or other filings to the court, they certify that to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). The party also certifies that "the factual

contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). A party may move for sanctions when conduct allegedly violates Rule 11(b) if they first present their motion to the opposing party and the challenged representation is not withdrawn or appropriately corrected within 21 days after service. Fed. R. Civ. P. 11(c)(2).

Southwest served a copy of Southwest's motion for sanctions on Harper's counsel on January 6, 2025. ECF No. 26-1 at 3. Southwest filed its motion with the court on February 12, 2025. Harper does not dispute that Southwest complied with Rule 11(c)(2)'s safe harbor provision.

Harper had a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, and a nonfrivolous basis for concluding that the factual contentions had evidentiary support or likely would have support. Although I find *Hartwig* persuasive and rule accordingly, it is a district court opinion and not binding on me. The most recent Ninth Circuit opinion to address the RLA exemption was from 1963 and did not consider modern customer service operations or remote work situations. And Harper's counsel attempted to verify Southwest's assertion that it paid for boot time according to policy but was unable to do so. Harper maintained that she was not paid for this time, and when her counsel asked Southwest for additional documentation showing how its payroll accounts for boot time, Southwest did not provide it. ECF No. 32-1 at 4-5, 16. Harper's attorney conducted a reasonable investigation given the circumstances, and, although I do not find Harper's FLSA exemption argument persuasive, it is not completely frivolous so as to warrant sanctions.

/ / / /

/ / / /

8

**C. Harper has plausibly alleged race and sex discrimination.**

Southwest argues that Harper's race and sex discrimination claims should be dismissed because she fails to allege that she was treated differently than similarly situated employees. Harper responds that she has plausibly alleged facts that give rise to an inference of discrimination.

To assert a prima facie case of race or sex discrimination under Title VII, Harper must plausibly allege she (1) belongs to a protected class, (2) performed her job satisfactorily, (3) suffered an adverse employment action, and (4) was treated differently than a similarly situated employee not of her protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). Although her claims are subject to the *McDonell Douglas*[3] burden-shifting analysis, she needs only to state a plausible claim for relief at the pleading stage. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). "Alternatively, a plaintiff can prevail merely by showing direct or circumstantial evidence of discrimination; he or she does not need to use the *McDonell Douglas* framework to establish a *prima facie* case." *Hittle v. City of Stockton, California*, 101 F.4th 1000, 1012 (9th Cir. 2024), *cert denied*, 145 S. Ct. 759 (2025). Harper may establish a prima facie case by demonstrating "an inference of discrimination in whatever manner is appropriate in the particular circumstances." *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1361 (9th Cir. 1985). I apply the same analysis to Harper's discrimination claims under Nevada law. *See Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII . . . and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases.").

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

9

Harper has pleaded a plausible claim for both race and sex discrimination. Although she does not allege that similarly situated employees who are not black or not women were treated differently, she alleges that Parker told her she was being "'manipulative' because she could "'speak well for an African American woman.'" ECF No. 24 at 5. Harper also alleges that Parker commented on her pretty smile multiple times, asked her personal questions, and became enraged when Harper kept her camera off to avoid these comments. These facts raise a plausible inference of discrimination sufficient to inform Southwest about the nature of her claims. Southwest does not argue that Harper has failed to plausibly allege any other elements of her discrimination claims, so I deny its motion to dismiss.

### D. Harper has plausibly alleged a hostile work environment.

Southwest argues that Harper's hostile work environment claim is based on two isolated comments that were not sufficiently severe or pervasive enough to alter her working conditions. Harper responds that she has alleged sustained harassment during her relatively brief employment at Southwest.

To bring a hostile work environment, Harper must show discrimination based on a protected trait that is "sufficiently severe or pervasive to alter the conditions of employment." *Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 978 (9th Cir. 2023) (quotation omitted). To determine whether conduct is sufficiently severe or pervasive, I "consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020) (quotation omitted). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.* (quotation omitted). "[S]imple teasing,

offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (simplified). However, when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [Harper's] employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (simplified).

Harper has plausibly alleged a hostile, discriminatory work environment. She alleges that Parker commented on her pretty smile and asked her personal questions that she found invasive. When Harper attempted to avoid this uncomfortable behavior, Parker yelled at her and turned a training session into a "fifty-six minute diatribe as Matthew Parker belittled Ms. Harper's work ethic, character, and personal views." ECF No. 24 at 5. Parker also allegedly accused Harper of being "manipulative because she could speak well for an African American woman." *Id.* (quotation omitted). And the stress from these training sessions and Harper's complaints to management resulted in Harper falling behind her fellow employees. *Id.* at 6. Taking these facts in the light most favorable to Harper, she has alleged a workplace permeated with ridicule and insult, comments that raise an inference of discrimination, and that the environment altered the terms and conditions of her employment by impeding her ability to complete training. I therefore deny Southwest's motion to dismiss Harper's hostile work environment claim.

**E. Harper has plausibly alleged disability discrimination.**

Southwest argues that Harper's disability discrimination claim should be dismissed because she has not plausibly alleged that she was fired because of a disability. Harper responds that one could plausibly infer discrimination based on the timing of her termination.

To plead a prima facie disability discrimination claim, Harper must plausibly allege (1) she is disabled within the meaning of the Americans with Disabilities Act (ADA), (2) she is a qualified individual able to perform the essential functions of the job with or without reasonable accommodation, and (3) Southwest terminated her because of her disability. *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018). Causation may be inferred from the timing of events. *See id.* at 434-35. Southwest disputes only whether Harper has plausibly alleged causation. *See* ECF No. 27 at 19.

Harper alleges that she had several panic attacks resulting in visits to the emergency room. ECF No. 24 at 7. A mental health provider recommended that Harper take medical leave, which Southwest approved. *Id.* Harper returned from leave but determined that she needed additional time off in accordance with her mental health professional's advice. *Id.* She informed Southwest that she needed additional leave, and Southwest terminated her "the same week." *Id.* This timing could raise a plausible inference that Southwest terminated Harper because of her mental health disability. I therefore deny Southwest's motion to dismiss Harper's disability discrimination claim.

### F. Harper may maintain her tortious discharge claim because she has plausibly alleged discrimination.

Southwest's sole argument for dismissing Harper's tortious discharge claim is that it is dependent on her discrimination and hostile work environment claims, which Southwest asserts should be dismissed. Because I deny Southwest's motion to dismiss Harper's discrimination and hostile work environment claims, I also deny its motion to dismiss her tortious discharge claim.

/ / / /

/ / / /

**G. Harper has plausibly alleged IIED and her claim is not preempted.**

Southwest argues that Harper's claim for IIED is preempted by Nevada statutory employment protections and that she has not plausibly alleged extreme and outrageous behavior to support such a claim. Harper responds that her pleading is sufficient under Nevada's sliding-scale approach to IIED.

To state an IIED claim under Nevada law, Harper must plausibly allege that (1) Southwest's conduct was extreme and outrageous; (2) Southwest either intended or recklessly disregarded causing Harper emotional distress; (3) Harper suffered severe or extreme emotional distress; and (4) proximate cause. *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983). Extreme and outrageous conduct "is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (simplified). "Liability for emotional distress will not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Abrams v. Sanson*, 458 P.3d 1062, 1070 (Nev. 2020) (simplified). Severe or extreme emotional distress must be shown with "objectively verifiable indicia" of its severity. *Blige v. Terry*, 540 P.3d 421, 432 (Nev. 2023) (en banc). Although Nevada follows a "sliding scale approach" that allows more extreme conduct to require less proof of emotional distress, Harper must still provide some objectively verifiable evidence of that distress. *Franchise Tax Bd. of State of Cal. v. Hyatt*, 407 P.3d 717, 741-42 (Nev. 2017) (en banc), *rev'd and remanded on other grounds sub nom Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230 (2019).

Construing the facts in the light most favorable to Harper, Parker's "fifty-six minute diatribe" belittling her "work ethic character, and personal views" can plausibly constitute extreme and outrageous behavior. ECF No. 24 at 5. And Harper has plausibly alleged that she

13

suffered objectively verifiable indicia of emotional distress in the form of multiple panic attacks requiring emergency room visits. Parker has plausibly alleged facts to support a claim for IIED.

Parker's IIED claim is also not preempted. Southwest argues that under *Sands Regent v. Valgardson*, 777 P.2d 898 (Nev. 1989) and *D'Angelo v. Gardner*, 819 P.2d 206 (Nev. 1991) the Supreme Court of Nevada held that the exclusive remedy for torts premised on discrimination are those provided under the anti-discrimination statutes. However, both *Valgardson* and *D'Angelo* held that an employee could not prevail on both a statutory discrimination claim and a public policy tortious discharge claim based on the same conduct. *See Valgardson*, 777 P.2d at 900; *D'Angelo*, 819 P.2d at 216-17 & n.10. Although it arises out of the same set of facts, Harper's claim for IIED is independent of her statutory discrimination claims. IIED does not require Harper to show discrimination based on a protected class or that Southwest took any adverse employment action. It is therefore possible for her to succeed on her IIED claim based on the alleged diatribe even if her discrimination claims ultimately fail. I therefore deny Southwest's motion to dismiss Harper's IIED claims.

**H.  I grant Harper's motion to extend time but caution her counsel going forward.**

Harper moved to extend the time to file her response to Southwest's motion for sanctions after the time had expired, arguing that competing obligations and unforeseen medical issues had overwhelmed her counsel's office. Southwest opposes the requested extension, arguing that it stipulated to a short extension, but Harper still filed her response six days after the extended deadline. Southwest also asserts that Harper's counsel has been warned about late filings by another judge in this district.

When a filing must be made within a specified time, I may extend the time "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R.

Civ. P. 6(b)(1)(B). Excusable neglect "is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inc. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S 380, 392 (1993) (simplified). Nonexclusive factors to consider include "the danger of prejudice to [Southwest], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (quotation omitted).

Harper's counsel declared that the only other attorney at his office has been undergoing cancer treatments and that they needed to hire a contract attorney to assist with managing their caseloads. ECF No. 33-1 at 2-3. He further declared that he worked diligently including nights and weekends to complete the response along with his competing responsibilities. *Id.* at 3-4. Because of at least some of the circumstances around this late filing, and in the interest of fair and just adjudication of Harper's claims, I will consider her response. Her counsel is advised to timely file a motion for extension prior to future filing deadlines if the parties are unable to agree to a stipulation.

**III. CONCLUSION**

I THEREFORE ORDER that defendant Southwest Airlines, Co.'s motion for sanctions **(ECF No. 26) is DENIED**.

I FURTHER ORDER that defendant Southwest Airlines, Co.'s motion to dismiss **(ECF No. 27) is GRANTED in part**. I grant the motion as to plaintiff Jala Harper's second and fourth claims for unpaid overtime but deny the motion for all other claims.

I FURTHER ORDER that plaintiff Jala Harper's motion to extend time **(ECF No. 33) is GRANTED**.

DATED this 30th day of August, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE